# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Andrew J. Maxwell, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") assigned to the Kansas City, Missouri Field Office. As such, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516(1). I have been an ATF SA since August 2019. During my tenure as an ATF SA, I have conducted investigations related to violations of Title 18 and Title 21, United States Code, to include unlawful possession of firearms by prohibited persons, the use of firearms in the furtherance of crimes of violence, and illicit drug activities. Prior to joining the ATF, I was a Police Officer with the Breckenridge Police Department, the City of Leawood Police Department, and the City of Lawrence Police Department, where my assignments included patrol.

2. Through my training and experience in the investigation of controlled substances and through interaction with other law enforcement officers who investigate such offenses, I know the following.

   a. that individuals involved in trafficking contraband firearms and controlled substances maintain books, records, receipts, notes, correspondence, ledgers, and other records, relating to the transportation, ordering, and/or distribution of said items, even though sometimes in code, and such individuals commonly "front" (deliver on consignment) firearms and controlled substances and maintain such records in doing so;

   b. that it is common practice for those involved in distributing contraband

1

firearms and controlled substances to secret contraband, proceeds of sales, and records of transactions in secure locations within their residence, or other property including storage units or safe deposit boxes, for ready access and/or to conceal them from law enforcement authorities;

c. that persons involved in trafficking contraband firearms and controlled substances conceal in their residences or other property caches of said items, large amounts of currency, financial instruments, and other assets of value which are the proceeds of transactions; and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money related to engagement in trafficking activities; that persons involved in trafficking often purchase substantial assets including cars, boats, and homes with the proceeds of transactions in manners to conceal the true source of the funds; and that courts have recognized that unexplained wealth is probative as evidence of crimes motivated by greed, in particular, trafficking in controlled substances.

d. that persons engaged in distributing controlled substances maintain on the premises, paraphernalia for packaging, cutting, weighing, and distributing controlled substances, and equipment used in the packaging, weighing, and otherwise preparing for the distribution of controlled substances;

e. that persons engaged in distributing both contraband firearms and controlled substances maintain on the premises addresses and telephone numbers in books or papers and in contact lists in cell phones which reflect the names, addresses, and/or telephone numbers for their sources, customers, and associates related to their trafficking activities, even though sometimes in code;

f. that persons engaged in trafficking contraband firearms and controlled substances maintain on the premises digital photographs and/or videos of co-conspirators,

associates, assets, and controlled substances;

  g. that persons involved in trafficking contraband firearms and controlled substances keep and maintain personal firearms to protect themselves and their assets from those who would seek to rob or steal their assets from them; and

  h. that persons who engage in trafficking contraband firearms and controlled substances utilize cell phones and other communication devices in order to store contact lists, share images/videos of their products, and to arrange for delivery and distribution of said items.

3. The facts in this affidavit are based on my own investigation and information provided to me by other law enforcement officers. Because this affidavit is submitted for the limited purpose of establishing probable cause to search the location further described in Attachment A for the items listed in Attachment B, not all of the information known to me about this investigation has been included in this affidavit.

## PURPOSE OF AFFIDAVIT

4. I am seeking to search a storage closet associated with 1815 South Brookstone Village, #204, Independence, Missouri (hereinafter the "**Target Location**"), which is more fully described in Attachment A, for the items listed in Attachment B. I am seeking evidence related to violations of 21 U.S.C. §§ 841(a)(1) and 846, that is, distribution of controlled substances, possession with the intent to distribute controlled substances, and conspiracy to distribute controlled substances.

5. I have probable cause to believe that a search of this location will lead to evidence of violations of 21 U.S.C. §§ 846 and 841(a)(1), that is, distribution of controlled substances, possession with the intent to distribute controlled substances, and conspiracy to distribute controlled

substances, as well as the identification of individuals who are or have been engaged in the commission of those crimes.

## PROBABLE CAUSE

6. 1815 South Brookstone Village, #204, Independence, Missouri, has been identified as **M. GARDNER's** primary address. Information received from a subpoena to Evergy reveals that the apartment's utilities are in **M. GARDNER's** name. Surveillance agents have also observed **M. GARDNER** coming and going from the apartment on numerous occasions.

7. **M. GARDNER** has active warrants in Independence, Missouri for domestic assault with injury and also non-appearance (three separate warrants). **M. GARDNER** is a convicted felon for possession of a controlled substance. **M. GARDNER** also has felony SIS adjudications for two counts of possession of a controlled substance, distribution of a controlled substance, and driving while suspended. **M. GARDNER** has felony arrests for possession of controlled substances, tampering with utility services, receiving stolen property, first and second degree assault, domestic assault, first degree domestic assault, and possession of drug paraphernalia. **M. GARDNER** has a misdemeanor conviction for domestic assault. **M. GARDNER** has been involved in two firearms incidents, with each firearm having multiple NIBIN leads. **M. GARDNER** is associated with one firearm that has been recovered by KCPD from crime scenes. **M. GARDNER** has been identified through this investigation as an enforcer and controlled substance distributor for the ADTO.

8. During the Title III wire, agents monitored **M. GARDNER's** phone for 30 days and estimate that he discussed narcotics during at least 225 calls. **M. GARDNER** does not have a job and agents believe he makes his living selling crack cocaine. Agents believe **M. GARDNER** conducts a minimum of five narcotics transaction a day, for amounts ranging from $20 to $500, with an average of $50 per transaction. The following calls are representative conversations

intercepted from **M. GARDNER** pertinent to his involvement in the violations of federal law under investigation.

9. On January 19, 2022, a UM called **M. GARDNER**. The following conversation occurred, which was transcribed as follows:

| | |
|---|---|
| **M. GARDNER**: | Hello. |
| UM: | Hey, what's going on? |
| **M. GARDNER**: | What's up? |
| UM: | Not a whole lot. You here in the city? |
| **M. GARDNER**: | Yeah. |
| UM: | Yeah, where, where you at? |
| **M. GARDNER**: | I'm in the city. I'm on, uh, Bales. |
| UM: | Bales? |
| **M. GARDNER**: | [Coughs] Yeah. |
| UM: | On 31st and Bales? |
| **M. GARDNER**: | Yep. |
| UM: | Yeah. Okay, well I'm getting ready to leave work. I've gotta swing over by the pawn shop and get a little money out, I'mma...pay you another 15 and then I'll only owe you 15. [Chuckles] |
| **M. GARDNER**: | Okay. What, I mean what you trying to get? |
| UM: | Uh, I'm gonna want, uh, 60. I'mma give you 75. |
| **M. GARDNER**: | Okay. |
| UM: | Thank you. |
| **M. GARDNER**: | Yeah. |
| UM: | A'right, I'll see you in a bit. |

5

Based on my training experience in this investigation, I believe UM is asking **M. GARDNER** for $60 worth of crack cocaine. The UM owes **M. GARDNER** $15, so he will pay **M. GARDNER** a total of $75 for the crack cocaine and the debt.

10. On January 22, 2022, **BLACKMON** called **M. GARDNER**. The following conversation occurred, which was transcribed in relevant parts as follows:

| | | |
|---|---|---|
| **BLACKMON**: | | Did you go home and get the, get, get the gun? |
| **M. GARDNER**: | | Go home and [unintelligible] real fast. |
| **BLACKMON**: | | Nah, I thought you had did it before [unintelligible] uh, went out with brother. That's all. |
| **M. GARDNER**: | | Nah. Gonna go. |

Based on my experience in this investigation, I believe that **BLACKMON** wants to know if **M. GARDNER** was going to go home, to 1815 South Brookstone Village, #204, Independence, Missouri, and get his firearm. Based on my training and experience, I know that it is common for drug dealers to carry a firearm on their person for protection. I believe that, in this instance, **M. GARDNER** left his firearm at the apartment where he stores the firearm when he is not carrying it.

11. On January 28, 2022, an unknown male, who self-identified as "Mike," called **M. GARDNER**. The following conversation occurred, which was transcribed in relevant part as follows:

| | | |
|---|---|---|
| MIKE: | | Hello? [PAUSE] Hello? |
| **M. GARDNER**: | | Hello? [Voices overlap] |
| MIKE: | | Can you [Unintelligible]? uh... |
| **M. GARDNER**: | | Damn, what's wrong with you? The crack [PH] [unintelligible] phone? |
| MIKE: | | The chronic, the chronic dawg. |

6

| | |
|---|---|
| **M. GARDNER**: | Nah chronic, I don't have nobody selling like that. [Voices overlap] |
| MIKE: | You have no chronic? |
| **M. GARDNER**: | Nah. [Voices overlap] |
| MIKE: | Oh shit, I'm way in the 40 [40th block]. They'll take the, they'll take the 45. |
| **M. GARDNER**: | I don't know where you at? |
| [VOICES OVERLAP] | |
| MIKE: | [Unintelligible], I'mma be at the house. |
| **M. GARDNER**: | You at the house [unintelligible]. |
| MIKE: | I'm about to leave here from 35th, n****. Ain't gonna take me but 15 minutes to get there, 10 minutes. Cuhz— |
| **M. GARDNER**: | Alright. |
| MIKE: | I ain't gonna wait on you, man, no 30, no 40 minutes, for you. Alright. |
| **M. GARDNER**: | Man, come on man. [Unintelligible] home yet. |
| MIKE: | Alright. |

Based on my training and experience, I know that "chronic" is a term used to describe high quality marijuana and "crack" is short for crack cocaine. I believe Mike was asking if **M. GARDNER** had any marijuana, but **M. GARDNER** did not understand him and asked if Mike said crack. Mike repeated himself. **M. GARDNER** said he did not have marijuana. Mike then decided that "they"—i.e., whoever he was with—would take the 45, or $45 worth of crack cocaine.

12.   Throughout the investigation agents have consistently observed **M. GARDNER** at 1815 South Brookstone Village, #204, Independence, Missouri. ATF agents have intercepted calls about **M. GARDNER's** lease ending on March 31, 2022, and **M. GARDNER** has said he may

7

move after his lease it up, but gave no indication of moving prior to his lease ended. **M. GARDNER M. GARDNER**'s dark grey charger has a vehicle GPS location device on the vehicle and placed the vehicle at 1815 South Brookstone Village within the last two weeks. The vehicle has since become inoperable and is currently parked at 1815 South Brookstone Village. On March 1, 2022, ATF agents observed **M. GARDNER** driving his other vehicle, a dark grey Impala, which had previously been sitting in front of 1815 South Brookstone Village for several months without moving. **M. GARDNER** has also been observed driving **BLACKMON**'s blue Honda Civic. Based on **M. GARDNER's** habit of changing vehicle and letting other ones sit for long periods of time, I do not believe it is unusual for his vehicle to be parked outside his girlfriend's house for long periods of time while he drive's another vehicle.

13. On March 1, 2022, a federal grand jury seated in Kansas City, Missouri, returned an indictment charging **M. GARDNER** with, among other things, conspiracy to distribute cocaine base, fentanyl, cocaine, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(C)–(D), and 846. A warrant was subsequently issued for **M. GARDNER's** arrest and remains outstanding.

14. On Wednesday, March 9, 2022, ATF agents executed federal search warrant 22-SW-00130-JAM at 1815 South Brookstone Village, #204, Independence, Missouri. Law enforcement made entry into the residence and conducted a search of the residence pursuant to the warrant. During a search of the residence, there was a locked exterior closet door found associated with the apartment. **M. GARDNER** initially told law enforcement on scene that the locked exterior closet door belonged to him and denied consent for law enforcement to enter the locked exterior closet. Law Enforcement also confirmed with the property management company that the locked exterior closet belonged to unit #204. Kansas City, Missouri, Police Department K-9 Officer Scott Nelson and his K9 "Scoop" arrived on scene to assist. K9 Scoop positively alerted to the scent of

narcotics coming from the door of the locked exterior closet. K-9 Officer Scott Nelson and his K9 "Scoop" are both certified with the National Police K9 Association and their certifications are current. During a search of the interior of the apartment, the following items were found:

    a. A Ruger PC Charger firearm;

    b. Approximately 34 rounds of ammunition;

    c. A sandwich bag box;

    d. Pill bottles;

    e. A Royal Sovereign money counter;

    f. Assorted .223-caliber ammunition;

    g. A Taurus nine-millimeter pistol;

    h. Approximately 16 rounds of nine-millimeter ammunition;

    i. United States Currency; and

    j. Approximately 28.9 grams of suspected cocaine.

15. Based on the foregoing, I believe that **M. GARDNER** is currently utilizing the **Target Location** to further drug trafficking activity, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Based on the above, I have probable cause to believe and do believe there is probable cause to request that the Court issue a search warrant directing the search of the location further described in Attachment A for the items described in Attachment B, which are contraband or evidence, or are otherwise used to facilitate or promote, or which constitute proceeds of the crimes listed above.

## CONCLUSION

16. Based on my training and experience, and through the intelligence gathered in the course of this investigation, I expect to find the evidence, fruits, instrumentalities, and contraband described herein and in Attachment B at the **Target Location**.

17. I further request that the Court order that all papers in support of this application,

including the affidavit, search warrant, search warrant return, and Order granting sealing be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation. Additionally, it is requested that these documents be disclosed as necessary for any discovery in criminal prosecutions without unsealing.

    FURTHER YOUR AFFIANT SAYETH NAUGHT.

ANDREW MAXWELL
Digitally signed by ANDREW MAXWELL
Date: 2022.03.09 13:27:18 -06

Andrew J. Maxwell
Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives

Subscribed and sworn to before me via telephone or other reliable electronic means on this  9th  day of March 2022.

_____
HONORABLE JILL A. MORRIS
United States Magistrate Judge
Western District of Missouri